1241-15   1242-15

NO: PD-1241-15 and PD-1242-15

IN THE

COURT OF CRIMINAL APPEALS

OF TEXAS

ORIGINAL

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 11 2015

Abel Acosta, Clerk

HOWARD MARTIN HARRIS

Petitioner

v.

THE STATE OF TEXAS

Respondent

Petition is in Appeal from Cause Numbers 12CR1863 and 14CR0154 in the 212th District Court of Galveston County, Texas, Honorable Bret Griffin, Judge Presiding, and Nos. 14-14-00391-CR and 14-14-00392-CR in the Court of Appeals for the Fourteenth District of Texas at Houston

FILED IN
COURT OF CRIMINAL APPEALS

DEC 11 2015

Abel Acosta, Clerk

PETITION FOR DISCRETIONARY REVIEW

Howard Martin Harris #1940422

Petitioner Pro se

Huntsville Walls Unit

815  12th  Street

Huntsville, Texas 77348

ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . i

List of Parties . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . iii

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . iv

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . iv

Statement of Procedural History . . . . . . . . . . . . . . . . . . 1

Grounds for Review

    Part A. The Fourteenth Court of Appeals (COA) erred
           when it found the trial court did not err in
           denying Harris' motion to suppress . . . . . . . . . 1

    Burden of proof . . . . . . . . . . . . . . . . . . . . . . . 2

    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . 4

    Part B. The COA failed to consider the totality of the
           circumstances surrounding Harris' warrantless
           arrest resulting in a misapplication of law . . 1

    Discussion . . . . . . . . . . . . . . . . . . . . . . . . . 5

    List of Facts . . . . . . . . . . . . . . . . . . . 5,6,10,11

    Arguments and Authorities . . . . . . . . . . . . . . . . . 7

    Summary of Argument . . . . . . . . . . . . . . . . . . . . 13

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . 14

Sworn Declaration . . . . . . . . . . . . . . . . . . . . . . . . . 14

Appendix . . . . . . . . . . . . . . . . . . . . . . . . . . . . . End

## LIST OF PARTIES

Petitioner:

Howard Martin Harris #1940422
Huntsville Unit
815 12th Street
Huntsville, Texas 77348

Petitioner's Trial Attorney:

Stacy Valdez
711 W. Bay Area Blvd., Ste 600
Houston, Texas 77598

Petitioner's Appellate Attorney:

Joel H. Bennett
1100 Nasa Parkway, Ste 302
Houston, Texas 77058

Presiding Judge, Trial:
&
Presiding Judge, Suppression:

Honorable Bret Griffin
&
Honorable David E. Garner
212 District Court Galveston
Justice Center 600 59th St.
Galveston, Texas 77551

Attorney for State, Trial:

Candice Freeman
Paul Love

&

Attorney for State, Appeal:

&

Rebecca Klaren
Galveston County Criminal
District Attorney's Office
600 59th Street, Ste. 1001
Galveston, Texas 77551

ii

# LIST OF AUTHORITIES

Amores v. State, 816 S.W.2d 407(Tex.Crim.App.1991). . . . . .3, 10

Caramouche v. State, 10 S.W.3d 323(Tex.Crim.App.2000) . . . . 10

Evitts v. Lucey, 105 S.Ct. 830 (1985) . . . . . . . . . . . . 4

Ford v. State, 158 S.W.3d 488(Tex.Crim.App.2005). . . . . . . 1

Gutierrez v. State, 221 S.W.3d 680(Tex.Crim.App.2007) . . . . 7

Hardinson v. State, 597 S.W.2d 355(Tex.Crim.App.1980) . . . . 12

Hicks v.Oklahoma, 100 S.Ct. 2227 (1980) . . . . . . . . . . . 4

Honeycutt v. State, 499 S.W.2d 662(Tex.Crim.App.1973) . . . . 7

Jeffley v. State,38 S.W.3d 847(Tex.App.Houston[14 Dist.]2001) 3

Kennedy v. State, 338 S.W.3d 81 (Tex.App.-Austin 2011) . . . . . 5

Missouri v. McNeeley, 133 S.Ct. 1552 (2013) . . . . . . . . . 12

Pennywell v. State, 125 S.W.3d 473(Tex.Crim.App.2003) . . . . 5

Pennywell v. State, 127 S.W.3d 149(Tex.App.Hou[14 Dist.]2001. 3

Polk v. State, 738 S.W.2d 274(Tex.Crim.App.1987). . . . . . . 4

Randolph v. State, 152 S.W.3d 764(Tex.Crim.App.2004). . . . . 8,9

Smith v. State, 739 S.W.2d 848(Tex.Crim.App.1987) . . . . . . 7,8

Vitek V.Jones, 100 S.Ct. 1254 (1980) . . . . . . . . . . . . 4

Welsh v. Wisconsin, 104 S.Ct. 2091 (1984) . . . . . . . . . . 3,9

## CONSTITUTIONS, STATUTES, RULES

U.S. Constitution Amendment Four . . . . . . . . . . . . . . 8,9

U.S. Constitution Amendment Fourteen. . . . . . . . . . . . . 4

Tex.CodeCrim.Proc.art. 38.23(a) . . . . . . . . . . . . . . . 3,4

Tex.CodeCrim.Proc.art. 14.03(a)(2). . . . . . . . . . . . . . 7,8

Tex.RulesApp.Proc. 44.2(a). . . . . . . . . . . . . . . . . . 5

Tex.RulesApp.Proc. 47.1 . . . . . . . . . . . . . . . . . . . 5

Tex.RulesApp.Proc. 66.3 . . . . . . . . . . . . . . . . . . . 1,2

## REASONS SUPPORTING ORAL ARGUMENT

Petitioner lacks the acquired knowledge and experience necessary to fully explain and convey the particulars of his argument within the confines of the written Petition. There are relevant points of fact and counter-point issues that need to be argued and considered in order to determine the intent and proper application of law. Petitioner asserts that there is more at stake here than deciding whether or not to uphold a lower courts decision. The relevant issue here is the interpretation of law vs. the intent of law, which is a crucial factor and can only be adequately addressed through live oral arguments. Petitioner request that oral argument be granted and that the Honorable Court re-instate Petitioner's court appointed appellate counsel, Joel H. Bennett, Sears & Bennett, LLP, Houston, Texas, to represent the interest of Petitioner in oral arguments.

## STATEMENT OF THE CASE

Petitioner was charged in two indictments with aggravated sexual assault (with no enhancement) and aggravated kidnapping with one enhancement. Petitioner initially pled not guilty to the allegations and a trial by jury began on March 17, 2014. During the presentation of evidence, Petitioner changed his plea from "not guilty" to "guilty" and was sentenced pursuant to a plea agreement. The trial court pronounced sentence at twenty (20) years in the Institutional Division of Texas Department of Criminal Justice and no fine in both cases, run concurrent in accordance with the plea agreement. Judgment was entered March 19, 2014. A motion for new trial was overruled on May 16, 2014. An appeal was granted and is the subject of this PDR.

## PROCEDURAL HISTORY

Petitioner appealed to the 14th District Court of Appeals, Cause Nos. 14-14-00391-CR and 14-14-00392-CR, raising the following issues on appeal:

"The Trial Court Erred In Denying Appellant's Motion To Suppress His Statements. His statements was obtained after an illegal warrantless arrest. The trial court erred in finding there was probable cause of future bodily injury. Additionally, the State wholly failed to show that getting a warrant was impracticable." The court of appeals affirmed the trial court's decision on August 25, 2015. A motion for rehearing was filed asserting: "The original opinion of the court of appeals omits the key and undisputed fact which proves that the complaintant was not in danger of further bodily injury at the time of the warrantless arrest." The court of appeals denied the motion for rehearing September 10, 2015. This PDR ensues.

## GROUNDS FOR REVIEW

I.  **The Fourteenth Court of Appeals (COA) erred when it found the trial court did not err in denying Harris's motion to supress.**

   A. The COA improperly shifted the burden of proof to Harris to prove the validity of his warrantless arrest.

   B. **The** COA failed to consider the totality of circumstances surrounding Harris' warrantless arrest resulting in a misapplication of law.

## REASONS FOR REVIEW

1. The COA appears to have misconstrued Tex.CodeCrim.Pro.art.14.03 (a)(2), thereby deciding an important question of State and Federal law which has not been, but should be, settled by the Court of Criminal Appeals.                    T.R.A.P. 66.3(b).

2. The Decision in this case conflicts with decisions rendered by Court of Criminal Appeals and the Supreme Court of the United States.                                          T.R.A.P. 66.3(c).

1

3. The decision below has declared that the warrantless arrest of persons in the privacy of their homes is not a constitutional issue to be decided. T.R.A.P. 66.3(d).

4. The decision in this case so far deviates from the fair administration of justice, or has sanctioned such departure by a lower court, that the Court of Criminal Appeals correction is required. T.R.A.p. 66.3(f).

A. THE COA IMPROPERLY SHIFTED THE BURDEN OF PROOF TO HARRIS TO PROVE THE VALIDITY OF HIS WARRENTLESS ARREST.

This ground is premised on the COA impermissibly shifting the burden of proof upon Harris to prove his warrantless arrest in his home violated his constitutional rights. The COA foreclosed the important constitutional implications of Harris' illegal, warrantless arrest in his home, articulating the following reasons:

> "We do not address whether the arrest occurred in a constitutionally protected area because appellant has not argued, either in the trial court or this court, that the arrest was illegal for that reason."
> [Memorandum Opinion (mem op) pg 6 n.2]

Harris should not have been required to argue the facts here. Facts are established, not argued. And under the facts of this case, not in dispute, as articulated by the COA, Harris was arrested without a warrant in his home:

> "Keele testified... He and [Cooley]... hand cuffed appellant... in his home... had not obtained an arrest warrant prior to placing appellant under arrest."
> [mem op pg 3]

Thus, the COA decision in this case conflicts with decisions rendered post, by the Court of Criminal Appeals in **Ford v State**; and the Supreme Court of the United States in **Welsh v Wisconsin**:

BURDEN OF PROOF

**Ford v State**, 158 S.W.3d 488, 492 (Tex.Crim.App. 2005)

> "To suppress evidence on an alleged Fourth Amendment violation, the defendant bears the initial burden of proving evidence that rebuts the presumption of proper police conduct. A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. Once the defendant has made this showing, the

2

burden of proof shifts to the State where it is required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable." (emphasis added)

Welsh v Wisconsin, 104 S.Ct. 2091, 2098 (1984)

"When an officer undertakes to act as his own magistrate, he ought to be in a position to justify it by pointing to some real immediate and serious consequences if he postponed action to get a warrant." Citing Mc. Donald v U.S. 551 (1948) (emphasis added)

Here, the State bore the burden of establishing the validity and reasonableness of Harris' 4th Amendment encroachment. The trial court was entrusted with the responsibility of finding facts and making conclusions of law. This also entails establishing facts "subject to a more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances." Ford, supra at 493 n.16.

The proper Standard of Review the COA should have applied was the 'totality of the circumstances, known to the officer, at the time of the arrest', test. See Amores v State, 816 S.W.2d 407, 413-415(Tex.Crim.App.1991). Additionally, the COA decision is inconsistent with other sister courts decisions on the same issue. C.f. Pennywell v State, 127 S.W.3d 149 (Tex.App.-Houston[1stDist] 2001.)(When the pertinent facts are undisputed, appellate court reviews the trial court's resolution of a motion to suppress evidence de novo,[as a legal ruling].)(emphasis supplied).

Harris filed a 4th Amend. Const. claim asserting that his warrantless arrest was illegal, further he sought to suppress evidence obtained as fruit of that illegal warrantless arrest under Tex.CodeCrim.Proc.art. 38.23(a). See [mem op pg 5].

Harris has a due process protected liberty interest right in C.C.P.art. 38.23, that no evidence seized in violation of Texas law or the U.S. Constitution shall be admitted at a trial against

3

him. Rulings on a motion to suppress lies within the sound discretion of the trial court. However, because C.C.P.art. 38.23 requirements are mandatory, i.e., "[no] evidence... obtained illegally [shall] be admitted...," a judge has no discretion in ruling on exclusion of that evidence. Jeffley v State, 38 S.W.3d 847, 858 (Tex.App.-Houston[14thDist] 2001, pet. ref'd); Polk v State, 738 S.W.2d 274, 276 (Tex.Crim.App.1987).

The U.S. Supreme Court has repeatedly held that State statutes may create liberty interest that are entitled to the procedural protections of the Due Process Clause of the 14th Amend. Once a State grants a right dependant on the observance of State laws or the Constitution, due process protections attach to the decision to follow that right of exclusion, to insure that the State-created right is not arbitrarily abrogated. C.f. Vitek v Jones, 100 S.Ct. 1254, 1261 (1980): Hicks v Oklahoma, 100 S.Ct. 2227,2229 (1980): Evitts v Lucey, 105 S.Ct. 830, 839 (1985).

## CONCLUSION

The facts of Harris's arrest are undisputed, he was arrested, in his home, without a warrant. Harris asserted a 4th Amend. claim in the COA requesting the Court to reverse and remand his plea agreement obtained through the erroneous denial of a motion suppress the fruits of that arrest under mandatory state law C.C.P.art. 38.23(a).

The State wholly failed to shoulder it's burden to prove Harris' arrest [was not in his home], or that exigent circumstances existed to justify the warrantless arrest [in his home]. Therefore, under Pennywell v State, post, the COA was required to address the issue of Harris' warrantless arrest in the important 4th Amendment Constitutional context which applies:

4

On Petition for Discretionary Review the **Pennywell** Court held:

> "that the Court of Appeals was required to address issue that defendant raised in his brief... because this ground was 'necessary to the final disposition of the appeal' the Court of Appeals was required to address it," (Citing Tex. RulesApp.Proc. 47.1). <u>Pennywell v State</u>, 125 S.W.3d 473 (T.C.A.2003)

Harris has yet to receive a full and fair hearing on his 4th amend. suppression claim, which admitted illegally seized evidence. This error contributed to the State's leverage in obtaining his guilty plea and thus, his conviction. See Tex.RulesApp.Proc. 44.2(a): <u>Kennedy v State</u>, 338 S.W.3d 81, 102-03(Tex.App.Austin2011).

**B.** <u>THE COA FAILED TO CONSIDER THE TOTALITY OF THE CIRCUMSTANCES SURROUNDING HARRIS' WARRANTLESS ARREST, RESULTING IN A MISAPPLICATION OF LAW.</u>

<u>DISCUSSION</u>

In part 'B' of this ground, Harris will show how the Court of Appeals in reaching their decision afforded great weight to certain isolated facts and, wholly ignored other relevant facts that contravene the existence of probable cause. Harris will further show how this procrustean method of review is a departure from established procedure resulting in an erroneous decision, even absent that found in part "A" above.

The COA opinion provides the necessary framework for detailed discussion concerning the issue presented here. As in part "A" the relevant facts aren't in dispute. With the exception of one highly relevant fact, all facts necessary to the resolution of this portion of Harris' argument shall cite to the facts, as relied on, and recorded by the COA in it's Memorandum Opinion affirming this case.

<u>FACTS</u>

The facts are separated into two different groups. The first group are the facts relied on by the trial court and the COA in

5

reaching their respective decisions. The second group of facts contravene those decisions. All facts are numbered for conveinience during further discussion and arguments.

"The trial court made findings of fact that the deputies were concerned for further violence to the complainant due to:

1) the nature of the assault and the injuries she suffered;

2) appellant's alleged use of a weapon in the assault and to threaten the complainant;

3) appellant's relationship with the complainant and his act of following the complainant to her truck, which would allow him to locate the complainant in the future; and

4) defendant's departure from his apartment shortly after the complainant fled, which supported a reasonable inference that he was looking for the complainant."[mem op pg 7].

## CONTRAVENING FACTS

5) Although, the complainant alleged, and appeared to have been assaulted, she was within the immediate confines and protections of the Dickinson Police Department.[mem op pg 2]

6) Detective Balchunas was in possession of facts which, he believed, supported probable cause to arrest Harris. He was inside the police station where a warrant could be secured in a reasonably efficient manner and he instructed Cooley to secure the scene while he decided whether to get a search warrant. (Reporter's Record Vol. 3 pg 41).

7) Upon arriving at Harris' home, Cooley and Keele placed Harris in cuffs, where Harris was completely compliant with the officer's request to search for evidence of a crime.
[mem op pg 3].

8) At the conclusion of a fruitless search, even though Cooley and Keel found not one scintilla of evidence to substantiate the complainant's allegations, the officers remained in Haris' home. [mem op pg 3].

9) Clearly, at that point the facts established that the complainant was safely located inside the Dickinson Police Department, Harris was inside his home in handcuffs, Detective Balchunas was at the ready, and able to present his suspicions to a neutral magistrate, and Sergeant Cooley chose to contact the Assistant District Attorney for some guidance on how to proceed.[mem op pg 3].

10) Harris did not consent for officers to enter his home to effectuate a warrantless arrest, and the officers hadn't obtained an arrest warrant prior to arresting Harris.
[mem op pg 3].

6

## ARGUMENT AND AUTHORITIES

In a hearing on a motion to suppress the State relied on Texas Code of Criminal Procedure art. 14.03(a)(2) for statutory authorization to arrest Harris, inside his home, without warrant. The statute provides that:

> "Any peace officer may arrest without warrant persons who the peace officer has probable cause to believe, have committed an assault causing bodily injury, and the peace officer has cause to believe there is a threat of further bodily injury to the victim."

Harris does not challenge the statute nor question the soundness of excepting the warrant requirement when a situation arises where there is a legitimate need to stop further bodily injury to any victim. Never-the-less, the issue at bar is purely a question of law concerning the legistative intent, and the legal or practicable application of the meaning of "FURTHER" as it applies to the Fourth Amendment reasonableness requirement.

In the hearing on the motion to suppress, the State, under Texas law, was shouldered with the burden of proof on two specific points; that the arrest was authorized under Texas statutory law, and, that circumstances existed which made procuring a warrant impracticable.

> "If an officer arrest a suspect without a warrant, the arrest must fall within an exception listed in Chapter 14 of the Texas Code of Criminal Procedure. These exceptions are strictly construed." Honeycutt v State, 499 S.W.2d 662, 665 (Tex.Crim.App.1973).

> "The warrant requirement is not lightly set aside, and the State shoulders the burden to prove that an exception to the warrant applies." Gutierrez v State, 221 S.W.3d 680, 685 (Tex.Crim.App.2007).

> "It is axiomatic in this State that warrantless arrest may occur only in the most limited of circumstances, and the power to make a warrantless arrest is governed by statutes as well as case law on the subject... Furthermore, it has long been the law of this State, that in order for a warrantless arrest to be justified, the State must show the existence of circumstances which made the procuring of a

warrant impracticable." <u>Smith v State,</u> 739 S.W.2d 848, 851-852 (Tex.Crim.App.1987)

The trial court made explicit findings of fact, which included finding that, "At this hearing officers Cooley, Hunt and Keele each testified that they believed that there was a threat of future harm to the complainant." [mem op pg 4]

Additionally, the trial court ruled that Harris' warrantless arrest was legal and denied the motion to suppress articulating the following reason:

> "The thing that is persuasive to the court is that there was a threat. Your're going to end up in a ditch, words to the effect [sic], if you go to the police or whatever. Well, **she's at the police**... And I believe that the police could and should take into consideration the future threat to the victim." [mem op pg 4] (emphasis added).

Clearly, the trial court appears to have enacted and the COA has sanctioned, a new, per se exception to the general warrant requirement premised on a mere allegation of,"future danger to the victim." However, Texas legislative intent in passing C.C.P. art. 14.03(a)(2) remains sparse and there is no definition of "further bodily injury". Therefore, it is left for the Court of Criminal Appeals to interpret.

The COA uses an overbroad interpretation of facts which satisfy the Fourth Amendment definition of "exigent circumstances". And, in so doing makes an erroneous conclusion of law. The COA in it's Memorandum Opinion affirming this case, states the following:

> "Appellant contends that it is also settled law that a warrantless arrest violates the Fourth Amendment when there is no showing that seeking a warrant would have been impracticable. The risk of future harm to the victim, however, is itself a circumstance that legitimizes an otherwise illegal warrantless arrest. <u>Randolph v State,</u> 152 S.W.3d - 764, 771-73 (Tex.App.Dallas 2004 no pet.) (Concluding exigent circumstances include risk of danger to victim.)"
> [mem op pg 6].

The circumstances surrounding the arrest in 'Randolph' are, -

8

factually and critically, distinguishable from the circumstances which existed at the time of arrest in the present case. The C O A takes the conclusion of Randolph out of context, and mis-applies it to Harris' case without giving consideration to the unique circumstances surrounding his arrest.

When viewing 'Randolph' in context the COA misapplication of law becomes apparent. See 'Randolph', Id at 771,

> "Exigent circumstances embrace situations in which real, immediate, and serious consequences will certainly occur if a police officer postpones action to obtain a warrant. Welsh, 466 U.S. at 751, 104 S.Ct. 2091. Exigent circumstan-ces affecting the validity of a warrantless entry into a residence resulting in an arrest include the following:(1) a risk of danger to the police or victim,... Officer Quillin had 'a need to act quickly' under the Facts presented in or-der to prevent appellant from engaging in further violent attacks upon his pregnant wife."(Id at 773).

It is clear that the officer in 'Randolph' was faced with a situation where, a real and immediate, danger of FURTHER bodily injury to the victim existed. Thusly, the COA conclusion, that the holding in 'Randolph' supports a finding that the risk of "FUTURE" harm to the victim is, in itself, an impracticable circumstance that legitimizes an other-wise illegal warrantless arrest, is in error.

The COA applies the erroneous conclusion of law to the present case in an effort to justify Harris' warrantless arrest under the Fourth Amendment. Thusly, the COAs' determination that Harris' arrest was legal under the Fourth Amendment is predicated on a misapplication of law.

Because, the COA relied on their "Future harm" conclusion, the Court did not deem it necessary to give consideration to the relevant facts and circumstances, which, the record clearly supports. This is an even further misapplication of law, regard-

9

less of whether the "Future harm" conclusion is found to be correct or in error. To determine whether a particular warrantless arrest is legal or not, the Court of Appeals must look to all the facts known to the officer at the time of arrest, and apply the totality of the circumstances test. **Amores**, supra 413-15.

The simple fact that a statutory exception to the warrant requirement exist, does not automatically mean that the exception applies in every case. The statute does not overrule the Constitutional requirements of the necessity of a warrant. It merely defines a particular set of facts, that meet the requirement of "impracticality" to obtain a warrant. In **Caramouche v State**,10 S. W.3d 323(Tex.Crim.App.2000), this Court of Criminal Appeals quoted the language of the United States Supreme Court,

> "The essence of all that has been written is that the totality of the circumstances – the whole picture – must be taken into account." Id. at 328.

The trial court based it's determination on facts 1 thru 4, found in the list of facts located at the beginning of part "B" of this ground. The record supports that the State established these facts. However, in the process of establishing these facts, the State established other clearly relevant facts. See facts 5 thru 10 in that same list. With the exception of fact #6 all the facts are cited from the COAs' opinion, and are here cross-referenced to the record from the suppression hearing.

> #5. "Because Deputy Hunt and his partner could not be at the police station with the complainant and at the crime scene, Sergeant Cooley went to Harris' apartment."
> (Reporter's Record Vol. 3 p. 35)

> #6. (Reporter's Record Vol. 3 p. 41)

> #7. (Reporter's Record Vol. 3 p. 42-43, 45)

> #8. (Reporter's Record Vol. 3 p. 57-58)

> #9. (Reporter's Record Vol. 3 p. 51)

10

#10. (Reporter's Record Vol. 3 p. 45, 5)

The only persons to testify in the suppression hearing were Galveston County Sheriff's Deputies. All the facts were established, by the State, through the testimony of the officers. The trial court made the following finding of fact:

> "Testifying Deputies of the Galveston County Sheriff's Department were credible." (Findings of Fact And Conclusion of Law # 23)

Since, the officers themselves testified to these facts, we can draw an undeniable conclusion that these facts were within the collective knowledge of the officers at the time of arrest. And under the law must be considered in a fact-intensive, totality of the circumstances review.

The COA adopted the trial court's exclusionary method of review of the facts. In it's Memorandum Opinion the Court of Appeals provides its Analysis. [mem op pg 5-7]. At no point in its Analysis does the COA afford any weight or give consideration to the contravening facts established by the officers. Facts clearly within the officers' knowledge at the time of arrest. Therefore, the only conclusion which can be drawn is, that the Court of Appeals has failed to consider the totality of the circumstances. Failure to apply the totality of the circumstances test is a departure from the established method of review required under Texas law, and a misapplication of law. Any determination predicated upon this misapplication of law is in error.

In the hearing on the motion to suppress the State failed, under the circumstances surrounding Harris' arrest to produce sufficient facts conclusive to prove impracticality to obtain a warrant. The record of the hearing is completely void of any testimony or other evidence specific to the issue of practicality

11

to obtain a warrant. The relevant facts show that opportunity existed for the officers to seek a warrant without creating a situation which would have placed the complainant at risk of further assaults.

> "A police officer should always obtain an arrest warrant whenever possible." <u>Hardison v State</u>, 597 S.W.2d 355, 357-(Tex.Crim.App.[Panel Op.] 1980).

Yet, the State does not establish any facts to show why one of the officers located inside the police station with the complainant could have attempted to obtain a warrant.

Additionally the State does not produce any testimony or other evidence concerning how long it would thave taken to obtain an arrest warrant. The time necessary to obtain a warrant is a relevant factor in the determination of the impracticality to do so.

> "Technological developments that enable police officers to secure warrants more quickly, and do so without undermining the neutral magistrate's essential role as a check on police discretion, is relevant to the assessment of exigency." <u>Missouri v McNeely</u>, 133 S.Ct. 1552, 1562-63(2013)

There are too many unknown fact to show it was impractical to get a warrant.

However, the State succeeds in establishing sufficient contravening facts which mitigate the officers' probable cause to believe a danger of further bodily injury to the complaint existed. The officers testified that they were inside the police station with the complainant, and that additional officers were dispatched to Harris' residence. Where the officers secured the crime scene and placed Harris in cuffs. At the time of Harris' arrest, all the officers knew beyond any doubt that the complainant was not in danger of further assaults. With the officers possessing such knowledge the warrantless arrest does not properly comply with

12

the statute, and is not justified by law.

## SUMMARY OF ARGUMENT

The relevant facts established by the State are not in dispute. In this case there is no fact which requires a credibility determination. Nor, does the entire lack of evidence regarding the practicality to a warrant require a credibility determination. The State failed to produce sufficient facts to support a probable cause finding that there was a danger of further bodily injury. Additionally, The State wholly failed to produce any evidence on why it was impracticable to obtain a warrant for Harris' arrest. The 14th District Court of Appeals draws erroneous conclusion of law and applies it to the present case in an attempt to satisfy the State's burden to prove the impracticality to obtain a warrant. Independant of whether or not the Court of Appeals' conclusion of law was proper, the Court of Appeals fails to consider the totality of the circumstances in determining the legality of Harris' warrantless arrest. Such is the departure of a warrantless arrest, and is a misapplication of law. Any determination reached through this misapplication of law is in error.

For the foregoing reasons the Fourteenth District Court of Appeals' decision should be reviewed and reversed. Harris' statement, resulting from the illegal warrantless arrest, should be suppressed and this case remanded back to the trial court for further proceedings consistent with the findings of this court.

## PRAYER

PETITIONER RESPECTFULLY PRAYS, that the Honorable Court of Criminal Appeals, having found just cause, will grant this Petition for Discretionary Review, and award Petitioner the relief requested.

13

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been mailed by first class mail, postage prepaid to the Attorney for the State, and the Galveston County District Attorney on the date listed below.

Executed on this the _____7th_____ day of _December_, 2015.

_Howard Harris_
Petitioner pro se.

## SWORN DECLARATION

I, Howard Harris, TDCJ No. 1940422, being presently incarcerated in the Huntsville Walls Unit in Walker County County, Texas, verify and declare under penalty of perjury that the foregoing statements are true and correct.

Executed on this the _____7th_____ day of _December_, 2015.

_Howard Harris_
Petitioner pro se.

Howard Harris TDCJ No. 1940422

Huntsville Walls Unit

815 12th Street

Huntsville, Texas 77348

14

# A P P E N D I X

HOWARD MARTIN HARRIS
Petitioner

v.

THE STATE OF TEXAS
Respondent

Memorandum Opinion filed August 25, 2015

FROM THE

FOURTEENTH COURT OF APPEALS

**Affirmed and Memorandum Opinion filed August 25, 2015.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-14-00391-CR**
**NO. 14-14-00392-CR**

---

**HOWARD MARTIN HARRIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 212th District Court**
**Galveston County, Texas**
**Trial Court Cause Nos. 14CR0154 & 12CR1863**

---

## MEMORANDUM OPINION

Appellant Howard Martin Harris appeals his convictions for aggravated sexual assault and aggravated kidnapping, challenging the trial court's order denying his motion to suppress a videotaped statement used by the State at his trial. Appellant claims that the statement was obtained as a result of an illegal warrantless arrest and thus should have been suppressed. *See Reed v. State*, 809

S.W.2d 940, 944 (Tex. App.—Dallas 1991, no pet.) (stating that the use of evidence obtained through an illegal arrest is forbidden). We hold the trial court did not err in denying the motion to suppress because the warrantless arrest of appellant was not illegal given the officer's belief that an assault had occurred and genuine concern for the complainant's safety. *See McClatchy v. State*, 758 S.W.2d 328, 330 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). We therefore affirm the judgments of the trial court.

## BACKGROUND

According to testimony at the evidentiary hearing on appellant's motion to suppress, the complainant went to clean appellant's home on the night of July 11, 2012. When the complainant arrived, appellant threw her on the bed and began striking her repeatedly with his belt and fists. Appellant cut off the complainant's bra with a hunting knife. Appellant then pulled off the complainant's pants and forced her to spread her legs. Appellant threatened her and stated that the police would find her in a ditch if she did not comply. Appellant then penetrated the complainant's vagina with his fingers, causing her extreme pain.

Eventually, appellant set the hunting knife down and the complainant picked it up. Wielding the knife, the complainant successfully escaped the house and made her way to her truck that was parked outside. Appellant followed her outside and stated that if she did not give him his knife back, he would come through the truck window. The complainant threw down the knife and drove directly to a nearby police station.

When she arrived, the complainant spoke with Deputies Hunt and Ostermayer of the Galveston County Sheriff's Office. The deputies observed that the complainant was distraught and had marks all over her body that she claimed were the result of appellant's beatings. The complainant told Hunt what happened

2

to her and stated that her friend, appellant, was responsible for her injuries. Hunt communicated this information to his supervisor, Sergeant Brent Cooley. At this point, both Hunt and Cooley believed that they had probable cause to arrest appellant for assault.

Cooley and Corporal Keele, another officer on duty, travelled to appellant's home and knocked on his door. Cooley testified that he called Corporal Keele to assist him in the interest of officer safety based on the complainant's allegation that appellant had used a weapon in assaulting her. Appellant answered the door, and Cooley and Keele explained why they were there. Keele testified that he handcuffed appellant for investigative detention. He and Cooley then asked appellant if they could speak in his home because it was hot and there were mosquitoes outside. Appellant allowed the officers inside.

Keele read appellant his *Miranda* rights.[1] Cooley then asked if appellant would be willing to speak with them regarding the allegations made against him by the complainant. Appellant affirmed that he understood his rights and then gave oral consent to speak with the officers and written consent for the officers to search his home and vehicle for the hunting knife described by the complainant. The officers were unable to locate the hunting knife the complainant alleged appellant had used in the assault.

At the conclusion of the search, Cooley called the assistant district attorney on duty for guidance on the case. The assistant district attorney confirmed Cooley's suspicions that probable cause existed to arrest appellant for assault causing bodily injury. The officers then arrested appellant for assault causing bodily injury. The officers had not obtained an arrest warrant prior to placing appellant under arrest. The officers brought appellant back to the sheriff's station,

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

where Detective Balchunas interviewed him. The entire interview was videotaped.

Appellant filed a pre-trial motion to suppress his statement to Detective Balchunas, alleging it was the fruit of an illegal arrest. At this hearing, Cooley, Hunt, and Keele each testified that they believed that there was a threat of future harm to the complainant. The trial court ruled that appellant's warrantless arrest was legal and denied the motion to suppress the statement. The trial court articulated the following reason:

> The thing that is persuasive to the court is that there was a threat. You're going to end up in the ditch, words to the effect [sic], if you go to the police, or whatever. Well, she's at the police. There was a knife used. How she got away, whether she had a knife to use to get away is -- there some testimony of that, but there is physical damage on the victim. There is [sic] pictures of a bra that has been raggedly severed, and I believe that the police could and should take into consideration the future threat to the victim.

The trial court later signed findings of fact and conclusions of law.

Appellant pled not guilty and went to trial on both charges. Appellant's video statement was played for the jury during the trial. After the video was played, appellant decided to accept a plea agreement. He pled guilty to both aggravated sexual assault and aggravated kidnapping and pled true to a deadly weapon enhancement to the latter charge. The trial court accepted the plea, admonished appellant, and sentenced him to twenty years' imprisonment on each count with the sentences to run concurrently in accordance with the plea agreement.

Appellant filed motions for new trial in both cases, which the trial court denied. These appeals followed.

ANALYSIS

In a single issue in each appeal, appellant contends the trial court abused its discretion when it denied his motion to suppress because his video statement was obtained through an illegal warrantless arrest. *See* Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2015).

## I. Standard of review and applicable law

We review the trial court's ruling on a motion to suppress under a bifurcated standard. *Douds v. State,* 434 S.W.3d 842, 846 (Tex. App.—Houston [14th Dist.] 2014, pet. granted) (en banc). We afford almost total deference to the trial court's determinations of historical facts that the record supports, especially those based on an evaluation of credibility and demeanor. *State v. Elias,* 339 S.W.3d 667, 673 (Tex. Crim. App. 2011). We afford the same amount of deference to the trial court's rulings on mixed questions of law and fact when the resolution of those ultimate questions turns on evaluations of credibility and demeanor. *Id.* When those rulings do not turn on credibility and demeanor evaluations, we review them de novo. *Id.* We will uphold the trial court's ruling if it is correct under any theory of law applicable to the case. *Estrada v. State,* 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).

## II. The trial court did not err in denying appellant's motion to suppress.

### A. A danger of further bodily injury authorizes a warrantless arrest.

[A]ll arrests and searches without valid warrants are unreasonable unless shown to be within one of the exceptions to the rule that an arrest or a search must rest upon a valid warrant. A valid exception must exist and the burden is on the State to show that a warrantless arrest or search comes within some exception to the above general rule of exclusion.

*Wilson v. State,* 621 S.W.2d 799, 803-04 (Tex. Crim. App. [Panel Op.] 1981).

5

Such an exception exists in this case. In Texas, warrantless arrests are authorized in limited situations primarily set out in the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. arts. 14.01–14.03 (West 2015); *Swain v. State,* 181 S.W.3d 359, 366 (Tex. Crim. App. 2005). Article 14.03(a)(2) provides that a police officer may arrest a person without a warrant if the officer has probable cause to believe: that the person committed an assault resulting in bodily injury, and that there is danger of further bodily injury to the victim. Tex. Code Crim. Proc. Ann. art. 14.03(a)(2).

Appellant contends that it is also settled law that a warrantless arrest violates the Fourth Amendment when there is no showing that seeking a warrant would have been impracticable. The risk of future harm to the victim, however, is itself an impracticable circumstance that legitimizes an otherwise-illegal warrantless arrest. *Randolph v. State,* 152 S.W.3d 764, 771–73 (Tex. App.—Dallas 2004, no pet.) (concluding exigent circumstances include risk of danger to victim).[2]

In sum, under the Fourth Amendment and Texas law, a warrantless arrest is not illegal when the arresting officers have probable cause to believe that an assault causing bodily injury occurred and that there is a danger of further bodily injury. It is uncontested that the arresting deputies had probable cause to believe that appellant had committed an assault causing bodily injury. Thus, whether appellant's arrest was illegal (and his resulting statement should be suppressed) hinges on whether the arresting officers had probable cause at the time of the arrest to believe that there was a danger of further bodily injury to the victim.

---

[2] We do not address whether the arrest occurred in a constitutionally protected area because appellant has not argued, either in the trial court or this court, that the arrest was illegal for that reason. In any event, there is some evidence that appellant was handcuffed for officer safety and that appellant consented to the deputies entering his home before he was arrested.

**B.** **The record supports the trial court's findings and its conclusion that the officers had probable cause to believe there was a danger of further bodily injury.**

The trial court made findings of fact that the deputies were concerned for further violence to the complainant due to: the nature of the assault and the injuries she suffered; appellant's alleged use of a weapon in the assault and to threaten the complainant; appellant's relationship with the complainant and his act of following the complainant to her truck, which could allow him to locate the complainant in the future; and defendant's departure from the apartment shortly after the complainant fled, which supported a reasonable inference that he was looking for the complainant. Based on these facts, the trial court concluded that the deputies had probable cause to believe that there was a danger of further bodily injury to the complainant.

The trial court's factual findings are supported by the evidence from the hearing on appellant's motion to suppress, which is summarized in the background section above. In addition, the record reflects that Cooley, Hunt, and Keele each testified that they had strong concerns about a threat of future harm to the complainant. We conclude that, when viewed under the appropriate standard of review, the evidence from the suppression hearing supports the trial court's conclusion that the deputies had probable cause to believe that there was a danger of further bodily injury to the complainant. *See McClatchy*, 758 S.W.2d at 330 (concluding that although suspect was no longer in same location as victim, officers had sufficient facts on which to base belief that suspect might return to harm victim). We therefore hold that the trial court did not err when it denied appellant's motion to suppress, and we overrule appellant's single issue in each appeal.

7

## CONCLUSION

Having overruled appellant's issues on appeal, we affirm the trial court's judgments.

/s/    J. Brett Busby
        Justice

Panel consists of Chief Justice Frost and Justices Jamison and Busby.
Do Not Publish — TEX. R. APP. P. 47.2(b).

8